**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CARMEN RUDNICK, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>DOLCE & GABBANA S.R.L.,<br><br>Defendant. | CIVIL ACTION – CLASS ACTION<br><br>Civil Action No. 2:26-cv-3916-GJP |

**PLAINTIFF'S OPPOSITION TO DEFENDANT DOLCE & GABANNA S.R.L.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. LEGAL STANDARDS ..... 4

IV. ARGUMENT – RULE 12(B)(2) ..... 5

A. Dolce & Gabbana is subject to personal jurisdiction in Pennsylvania. ..... 5

B. The Court should authorize jurisdictional discovery before deciding Defendant's Rule 12(b)(2) argument. ..... 8

C. If *Hasson* applies and requires this Court to dismiss on these facts, then *Hasson* should be overturned by the Third Circuit en banc. ..... 9

V. ARGUMENT – RULE 12(B)(6) ..... 10

A. Plaintiff's WESCA claim is sufficiently pled. ..... 10

B. Plaintiff's Intrusion Upon Seclusion claim is sufficiently pled. ..... 13

C. Plaintiff's Breach of Contract claim is sufficiently pled. ..... 16

1. Plaintiff sufficiently pled the existence of a contract ..... 16

2. Plaintiff sufficiently pled cognizable damages. ..... 17

CONCLUSION ..... 19

**TABLE OF AUTHORITIES**


Cases Page(s)

*Antkowiak v. TaxMasters*,
455 F. App'x 156 (3d Cir. 2011) ..... 17

*Boettger v. Miklich*,
633 A.2d 1146 (Pa. 1993) ..... 10

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ..... 7

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, S. F. Cnty.,
582 U.S. 255 (2017) ..... 6

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ..... 6, 7

*Caraffa v. TD Bank, N.A.*,
2025 WL 2319668 (E.D. Pa. Aug. 12, 2025) ..... 11

*Com. v. Spangler*,
809 A.2d 234 (Pa. 2002) ..... 11

*Commc'ns Supply Corp. v. Iron Bow Techs., LLC*,
529 F. Supp. 3d 423 (W.D. Pa. 2021) ..... 16

*Commonwealth v. Fant*,
146 A.3d 1254 (Pa. 2016) ..... 10

*Cook v. GameStop*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ..... 11, 13

*D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*,
566 F.3d 94 (3d Cir. 2009) ..... 5

*Delong v. PHE, Inc.*,
2026 WL 2075564 (E.D. Pa. July 16, 2026) ..... 11

*Doe v. Post Acute Medical, LLC*,
2025 WL 511069 (M.D. Pa. Feb. 12, 2025) ..... 11

*Emmett v. Delta Air Lines, Inc.*,
2024 WL 2816502 (W.D. Pa. Jun. 3, 2024) ..... 12

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .......... 6

*Glover v. Junior*,
333 A.3d 323 (Pa. 2025) .......... 17

*Harris by Harris v. Easton Pub. Co.*,
483 A.2d 1377 (Pa. Super. Ct. 1984) .......... 14

*Hasson v. FullStory, Inc.*,
114 F.4th 181 (3d Cir. 2024) .......... 6, 7, 9, 10

*Hickey v. University of Pittsburgh*,
81 F.4th 301 (3d Cir. 2023) .......... 18

*In re Diisocyanates Antitrust Litig.*,
No. 18-1001, 2020 WL 1140245 (W.D. Pa. Mar. 9, 2020) .......... 8

*In re Facebook,*
, 956 F.3d .......... 15

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... 11, 15, 16

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 15, 16

*In re Solara Medical Supplies, LLC Customer Data Security Breach Litigation*,
613 F.Supp.3d 1284 (S.D. Cal. 2020) .......... 18

*Ingrao v. AddShoppers, Inc.*,
2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) .......... 11, 13

*International Shoe Co. v. Washington*,
326 U.S. 310 (1945) .......... 6

*Menkes v. Prudential Ins. Co. of Am.*,
762 F.3d 285 (3d Cir. 2014) .......... 5

*Miller Yacht Sales, Inc. v. Smith*,
384 F.3d 93 (3d Cir. 2004) .......... 4, 5, 7

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) .......... 18, 19

*Oliver v. Noom, Inc.*,
No. 2023 WL 8600576 (W.D. Pa. Aug. 22, 2023) .......... 12

*Opris v. Sincera Reprod. Med.*,
2022 WL 1639417 (E.D. Pa. May 24, 2022) ........ 18

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*,
967 F.3d 218 (3d Cir. 2020) ........ 5

*Plixer Int'l, Inc. v. Scrutinizer GmbH*,
905 F.3d 1 (1st Cir. 2018) ........ 8

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019) ........ 12

*Schur v. JetBlue Airways Corp.*,
2024 WL 2816552 (W.D. Pa. Jun. 3, 2024) ........ 12

*Shah v. MyFitnessPal, Inc.*,
2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ........ 14, 15

*Streamlight, Inc. v. ADT Tools, Inc.*,
No. 03-1481, 2003 WL 22594316 (E.D. Pa. Oct. 9, 2003) ........ 8

*Thomas v. Thomas Flexible Coupling Co.*,
46 A.2d 212 (Pa. 1946) ........ 17

*Thorsen v. Iron and Glass Bank*,
476 A.2d 928 (Pa. Super. Ct. 1984) ........ 19

*Toys "R" Us, Inc., v. Step Two, S.A.*,
318 F.3d 446 (3d Cir. 2003) ........ 8

*UMG Recordings, Inc. v. Kurbanov*,
963 F.3d 344 (4th Cir. 2020) ........ 8

*Vonbergen v. Liberty Mutual Ins. Co.*,
705 F. Supp. 3d 440 (E.D. Pa. 2023) ........ 12

*Walden v. Fiore*,
571 U.S. 277 (2014) ........ 6

*Wolfson v. Lewis*,
924 F. Supp. 1413 (E.D. Pa. 1996) ........ 14

Statutes

18 Pa. C.S. § 5702 ........ 10, 11

18 Pa. C.S. §§ 5701 ........ 1, 4

18 U.S.C. § 2510–2520 .......... 11

Rules

Federal Rule of Civil Procedure 12(b)(2) .......... 4, 5, 8

Other Authorities

Restatement (Second) of Torts § 652B .......... 14

## I. INTRODUCTION

Plaintiff Carmen Rudnick brings this class action against Defendant Dolce & Gabbana S.r.l. for procuring a third party to deliberately intercept and record the electronic communications of visitors to its website, https://www.dolcegabbana.com (the "Website"), in violation of Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA"), 18 Pa. C.S. §§ 5701, *et seq.*, and in breach of its own contractual promises to its customers. Defendant utilizes tracking technology on its Website to track and target website visitors for advertising purposes. Plaintiff alleges that Defendant went beyond merely embedding covert tracking code on its Website: it also continued to allow the interception of Plaintiff's and other visitors' communications even *after* they expressly withheld their consent.

Dolce & Gabbana now moves to dismiss, arguing that it is not subject to personal jurisdiction in this forum and that Plaintiff's well-pled allegations are insufficient to support her claims. *See generally* Def.'s Mem. in Supp. of Mot. to Dismiss.[1] The Court should exercise personal jurisdiction because these are Pennsylvania claims arising out of conduct centered in Pennsylvania, instigated by a Defendant willingly availing itself of Pennsylvania's markets with full knowledge that Plaintiff was located there. This case is not about one person's mere access to a website. It is about Defendant's false promise of privacy to entice thousands of Pennsylvanians to shop for and learn about Defendant's products on a website configured to facilitate browsing and purchases from Pennsylvania, while deceptively permitting a third party to extract commercially valuable data and private communications from those Pennsylvanians' personal devices without their knowledge or consent. The case belongs in Pennsylvania, not Italy.

[1] Defendant's Memorandum in Support of its Motion to Dismiss, Dkt. No. 9-1, is cited herein as "MTD."

Defendant's motion to dismiss for failure to state a claim is similarly meritless. Plaintiff has alleged *precisely* what WESCA prohibits—the intentional interception of electronic communications by a party who procured a third-party actor to conduct that interception without Website visitors' consent. Plaintiff has likewise stated claims for breach of contract and intrusion upon seclusion. Plaintiff has plausibly alleged that Dolce & Gabbana's own cookie box constituted an enforceable promise not to share visitors' data—a promise that it proceeded to breach. Further, Defendant's disregard of its own promises was highly offensive pursuant to binding Third Circuit precedent. Plaintiff therefore respectfully asks the Court to deny Defendant's Motion to Dismiss in its entirety.

## II. FACTUAL BACKGROUND

Dolce & Gabbana is an Italian company that sells products through various channels including through its website, https://www.dolcegabbana.com, Compl. ¶ 11, and through physical store locations, including one it maintains in Pennsylvania. Zambrelli Decl. (ECF 9-2) ¶ 15. The Website is written in English when visited from Pennsylvania and defaults to U.S. currency when displaying prices. Compl. ¶ 12. On its Website, Defendant advertises a United States customer service line with available hours between 9 a.m. and 9 p.m., Eastern Standard Time. *Id.* ¶ 13. The Website also allows visitors to locate Defendant's Pennsylvania store and book appointments there. *Id.* ¶ 14. Plaintiff specifically alleges that Defendant generates substantial revenue from its sales in Pennsylvania through the use of its Website. Compl. ¶ 11.

Defendant has admitted via two separate declarations that it knows when visitors to its Website are located in Pennsylvania based on their IP address, and that in a recent two-year period, the Website averaged close to 1,000 visits from Pennsylvania each day. Margotti Decl. (ECF 1-3) ¶¶ 7–9; Zambrelli Decl. ¶ 17.

Plaintiff is a Pennsylvania resident and citizen who visited Dolce & Gabbana's Website while in Pennsylvania to browse the company's products. Compl. ¶¶ 8, 45–46. Unbeknownst to Plaintiff, Defendant had embedded snippets of third-party JavaScript code on its Website called INSIDE (the "INSIDE Code"), that was supplied by Powerfront, Inc. Compl. ¶¶ 2–3, 15, 18. The Code was not a passive analytics tool, but instead instantaneously intercepted all the interactions she had with the Website, including the pages she viewed, URLs of web pages she visited, her browser information, IP address, demographic information, what she clicked on, and text entries into form fields. Compl. ¶¶ 2–3, 21–25.

This interception of Plaintiff's communications occurred despite Plaintiff's explicit denial of consent. When visitors, including Plaintiff, arrived on Defendant's Website, Defendant presented them with a pop-up box stating that it will not use cookies other than "technical cookies" without the user's consent: "[w]e use cookies, other than the technical ones, only once we have received your consent." Compl. ¶ 33.[2] Defendant thus promises Website visitors that it will not use cookies to "personalize content and ads, to provide social media features and to analyse our traffic" unless that user provides consent, and it allows visitors to use the "customize" button instead of the "Accept All" button to indicate they do not consent to the collection and sale of their data to third parties. Compl. ¶¶ 33–37. Plaintiff and members of the proposed class all took Dolce & Gabbana at its word and chose not to accept the cookies, instead customizing the setting to reject all non-"technical" cookies. Compl. ¶¶ 45–46, 58–60.

But Dolce & Gabbana ignored their choice entirely. Instead, Defendant procured a third-party vendor, Powerfront, and enabled it to use the INSIDE Code on the Website anyway, no matter what button the visitors clicked. Compl. ¶ 38. Thus, even after Dolce & Gabbana received

[2] Plaintiff's First Amended Complaint (ECF 1-2), is referred to herein as "Compl."

express refusal from Plaintiff and other visitors to consent to this type of tracking, it still allowed Powerfront to surreptitiously intercept and record visitors' electronic communications in real time, in direct violation of Dolce & Gabbana's promises. Compl. ¶¶ 2–5, 26, 38, 45–48, 52, 57–60, 105–07. This was not accidental. Dolce & Gabbana acted intentionally in deploying the code, making affirmative representations to visitors about their ability to control data collection, and then disregarding those representations to gain financially and serve its own commercial interests. Compl. ¶¶ 6, 53, 56, 100–01. And the consequences were immediate: after leaving the Website, Plaintiff began receiving advertisements on her Facebook and TikTok accounts, for the items similar to the Dolce & Gabbana products she had been searching for. Compl. ¶ 47.

Seeking to vindicate her own privacy rights and those of all other Pennsylvania citizens similarly harmed, Plaintiff filed her Class Action Complaint in the Court of Common Pleas for Philadelphia County, alleging that Defendant's actions constitute a violation of WESCA, 18 Pa. C.S. §§ 5701, *et seq.*, constitute common law intrusion upon seclusion, and constitute breach of contract. Defendant removed Plaintiff's Complaint to this Court and now moves to dismiss under Rules 12(b)(2) and (6), arguing that the Court does not have personal jurisdiction over Defendant and that Plaintiff fails to state a single claim on the merits. *See* MTD at 1.

## III. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(2), "a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). When the district court does not hold an evidentiary hearing as to personal jurisdiction, the plaintiff must "establish a *prima facie* case of personal jurisdiction," and the Court must accept as true all allegations in the complaint. *See id.*

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must allege enough facts to state a claim to relief that is plausible on its face. *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 289–90 (3d Cir. 2014). "A complaint has facial plausibility when there is enough factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 290 (internal citations and quotations omitted). In ruling on a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw "all reasonable inferences in the plaintiff's favor." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 229 (3d Cir. 2020).

## IV. ARGUMENT – RULE 12(B)(2)

### A. Dolce & Gabbana is subject to personal jurisdiction in Pennsylvania.

Defendant is subject to personal jurisdiction in Pennsylvania because Plaintiff's claims arise directly from Defendant's intentional contacts with Plaintiff in Pennsylvania while Defendant knew she was in Pennsylvania, causing Plaintiff to suffer immediate harm in Pennsylvania. The Supreme Court has never required a Plaintiff to show anything more than that to establish a forum's jurisdiction over a foreign defendant. The Due Process clause certainly does not require Pennsylvania courts to sit on the sidelines while major corporations knowingly use sophisticated electronic tools to siphon Pennsylvanians' personal communications and browsing data off their computing devices against their will.

The Supreme Court has articulated two tests for specific jurisdiction: (1) the traditional "minimum contacts" test and (2) the *Calder* "effects" test. The traditional test for specific jurisdiction entails a three-step analysis. *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). First, the court must evaluate whether the defendant established minimum contacts by "deliberately 'reach[ing] out beyond' its home—by, for

example, 'exploit[ing] a market' in the forum State or entering a contractual relationship centered there." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). Second, the court must determine whether the litigation "arise[s] out of or relate[s] to" at least one of those contacts. *Ford Motor*, 592 U.S. at 352 (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, S. F. Cnty., 582 U.S. 255, 262 (2017)). Third, if the first two requirements are met, the defendant has the burden to make a compelling showing that exercising personal jurisdiction "offend[s] traditional notions of fair play and substantial justice." *Ford Motor*, 592 U.S. at 358 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945)); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

"The *Calder* 'effects' test requires a plaintiff to plead facts establishing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 187 (3d Cir. 2024).

Here, this Court may exercise specific personal jurisdiction over Defendant under either test because Defendant has purposefully availed itself of Pennsylvania through its website, and while knowing that Plaintiff was visiting the Website from Pennsylvania and had expressly and contractually rejected her consent to tracking, Defendant allowed her data to be tracked and intercepted anyway for commercial gain. Compl. ¶¶ 2–5, 26, 38, 45–48, 52, 57–60, 105–07.

Defendant cannot reasonably contest that it has purposefully availed itself of Pennsylvania. It admits to operating a retail store in the state, Zambrelli Decl. ¶ 16, and that its interactive retail Website averages around 1,000 visits from Pennsylvania every day. Margotti Decl. ¶¶ 7–9; Zambrelli Decl. ¶ 17.

In a recent en banc Ninth Circuit opinion, that court held that website payment support vendor expressly aimed its conduct at California through its extraction, maintenance, and commercial distribution of the California consumers' personal data . . . ." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 756–57 (9th Cir. 2025); *accord Hasson*, 114 F.4th at 193 (addressing similar market; "There is no doubt that Papa Johns purposefully availed itself of the Pennsylvania market."). Defendant has minimum contacts with Pennsylvania for the same reasons.

These contacts are not random or sporadic and they are not the result of Plaintiff's "unilateral" choice to patronize Defendant's offerings. Defendant admits that it averaged nearly 1,000 Pennsylvania website sessions *per day* in a recent two-year period. Zambrelli Decl. ¶ 17 (attesting to 729,224 Pennsylvania sessions between May 2024 and April 2026).[3] Given that "a single contact that creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant," *Miller Yacht*, 384 F.3d at 96 (citing *Burger King*, 471 U.S. at 475 n.18), Defendant's daily availment of Pennsylvania through its Website suffices.

Plaintiff's claims also "arise out of" Defendant's contact with her device, which Defendant knew was in Pennsylvania, particularly after Plaintiff had loaded the Website on her device and sent a transmission indicating her rejection of tracking Cookies. Her claim arises directly out of Defendant's continued allowance of Powerfront's tracking of her after that point. Despite Defendant's knowledge of where Plaintiff was located, it took no steps to limit its continued tracking of her. As the First Circuit has explained, in contrast to a car manufacturer "that cannot limit where its customers take its product," a website operator "could design its site to not interact with" forum users, or "take the low-tech step of posting a disclaimer that its

[3] The Court can take judicial notice that a two-year period would equal either 730 or 731 days.

service is not intended for" forum users. *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 8 (1st Cir. 2018); *see also UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 354 (4th Cir. 2020) ("[Defendant] knew the Websites were serving Virginian visitors and yet took no actions to limit or block access, all while profiting from the data harvested from the same visitors.").

### B. The Court should authorize jurisdictional discovery before deciding Defendant's Rule 12(b)(2) argument.

"A court has discretion to allow discovery when considering a motion to dismiss for lack of personal jurisdiction." *In re Diisocyanates Antitrust Litig.*, No. 18-1001, 2020 WL 1140245, at *7 (W.D. Pa. Mar. 9, 2020). "Parties are entitled to a fair opportunity to engage in jurisdictional discovery to obtain facts necessary for thorough consideration of the [jurisdictional] issue." *Id.* (quoting *Streamlight, Inc. v. ADT Tools, Inc.*, No. 03-1481, 2003 WL 22594316, at *1 (E.D. Pa. Oct. 9, 2003)). "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc., v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (internal citations and quotations omitted). "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, . . . courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." *Id.* (internal citations and quotations omitted).

To the extent that the Court believes additional details would be relevant to its analysis, such as Defendant's specific Pennsylvania sales volume through its website, or the revenue it has gained from selling access to visitors' data, Plaintiff requests leave to conduct such discovery.

### C. If *Hasson* applies and requires this Court to dismiss on these facts, then *Hasson* should be overturned by the Third Circuit en banc.

In the event that the Court disagrees with Plaintiff and believes that she cannot establish personal jurisdiction over Dolce & Gabbana, then for purposes of issue preservation, Plaintiff briefly explains below why *Hasson* was wrongly decided and must be overturned by the Third Circuit en banc, or the Supreme Court. If current Third Circuit precedent would force Plaintiff—who used Dolce & Gabbana's U.S.-targeted website exactly as designed—to sue Dolce & Gabbana in *Italy* for intentionally invading her computing device against her express choice while she sat *in Pennsylvania*, then it is the precedent that is wrong, not Plaintiff.

In *Hasson*, the Third Circuit held that the Papa Johns pizzeria chain purposefully availed itself of Pennsylvania through its brick-and-mortar restaurants and by selling food there and through its website. 114 F.4th at 193. But the Third Circuit's specific jurisdiction analysis went awry on the "relatedness" prong when it held that the connection between the defendant's contacts with Pennsylvania and the plaintiff's wiretapping claims was "too weak." *Id.* at 193. Although the *Hasson* majority purported to be following the reasoning of *Ford Motor*, it failed to notice that that the plaintiff's claims easily met the more basic (yet stricter) "arise out of" portion of the test, let alone the more relaxed "relate to" alternative.

In the majority's efforts to explain why plaintiff could not meet the requirements of *Ford Motor*, it wrote that the plaintiff did not "allege facts regarding Papa Johns' in-forum promotion of the device that allegedly harmed him—the website." *Id.* at 194; *see also id.* ("he did not allege any facts regarding the promotion of its website *in Pennsylvania*.").

These observations were not relevant to the "relatedness" factor that the *Hasson* court was supposed to be evaluating at that point in the analysis. The court already correctly found that Papa Johns purposefully availed itself of Pennsylvania's market. *Id.* at 193. The next part of the

test was whether the plaintiff's claims "ar[o]se out of or relate[d] to" Papa Johns' contacts with Pennsylvania. Answering that question did not require revisiting the defendant's efforts to promote itself or its website within Pennsylvania. The plaintiff's claim arose directly out of one of the defendant's contacts with the forum: the transmission of a wiretapping device onto the plaintiff's computer while the plaintiff (in the forum) and defendant were exchanging electronic communications. That direct contact between the defendant and the plaintiff *in the forum* meant that necessarily, as a matter of logic and natural language, the wiretapping claim about that very same contact "arose out of" or "related to" the defendant's contact with Pennsylvania.

## V. ARGUMENT – RULE 12(B)(6)

### A. Plaintiff's WESCA claim is sufficiently pled.

Dolce & Gabbana argues that Plaintiff's communications with the website are not "contents" under the meaning of 18 Pa. C.S. § 5702. This argument fails. The majority of courts applying WESCA have found that allegations like Plaintiff's are sufficient to state a claim.

Under WESCA, "contents" with respect to a wire or electronic communication means "any information concerning the substance, purport, or meaning of that communication." 18 Pa. C.S. § 5702. This is a broad definition within a statute whose "provisions are to be strictly construed." *Commonwealth v. Fant*, 146 A.3d 1254, 1256 (Pa. 2016). Indeed, the Pennsylvania Supreme Court has emphasized that "*no* violations of *any* provisions of [WESCA] will be countenanced." *Boettger v. Miklich*, 633 A.2d 1146, 1148–49 (Pa. 1993) (emphasis in original).

Dolce & Gabbana asserts that in this circuit, "website tracking data is generally not considered 'contents' and, thus, is not actionable" under WESCA. MTD at 13–14. In support of this argument, Defendant heavily relies on only two such cases, and the pertinent analyses in both cases were *dicta* from courts that lacked Article III power to adjudicate WESCA claims on

the merits.[4] In contrast, far more courts in *ratio decidendi* have concluded that allegations that a site tracked "all website visitor actions, which necessarily includes all of the information input" sufficed as "contents" under WESCA. *See, e.g.*, *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 139 (3d Cir. 2015) ("Because the complaint pleads a broad scheme in which the defendants generally acquired and tracked the plaintiffs' internet usage, we are satisfied that this scheme, if it operated as alleged, involved the collection of at least some 'content' within the meaning of the [federal] Wiretap Act.").[5] *See also Caraffa v. TD Bank, N.A.*, 2025 WL 2319668 at *1 n. 1 (E.D. Pa. Aug. 12, 2025) (interception of "detailed URLs with search terms and button clicks . . . may constitute the interception of contents of communications'); *Doe v. Post Acute Medical, LLC*, 2025 WL 511069, at *5 (M.D. Pa. Feb. 12, 2025) ("[T]he acquisition of at least some content may be properly inferred from a complaint that includes facts plausibly demonstrating a broad scheme in which the defendants generally acquired and tracked the plaintiffs' internet usage.") (citation omitted); *Delong v. PHE, Inc.*, 2026 WL 2075564, at *8 (E.D. Pa. July 16, 2026) (concluding details URLs of subjects searched, categories browsed, products viewed, and products purchased constituted "contents"); *Oliver v. Noom, Inc.*, No. 2023 WL 8600576 at *7 (W.D. Pa. Aug. 22, 2023) ("Plaintiffs allege that [the Code] records all website visitor actions[,] which necessarily includes all of the information input .... At this stage, these allegations are sufficient"); *Schur v. JetBlue Airways Corp.*, 2024

---

[4] *See Cook v. GameStop*, 689 F. Supp. 3d 58, 62, 68 (W.D. Pa. 2023) ("Ms. Cook lacks standing to bring her claims . . . [e]ven if Ms. Cook had standing, she hasn't adequately stated a claim under Pennsylvania's Wiretap Act."); *Ingrao v. AddShoppers, Inc.*, 2024 WL 4892514 at *8 (E.D. Pa. Nov. 25, 2024) ("While a lack of standing is a fundamental flaw to Plaintiffs' Complaint that would alone warrant dismissal, alternative bases for dismissal exist under Rules 12(b)(2) and 12(b)(6).")

[5] *Google Cookie* interpreted the federal Wiretap Act, 18 U.S.C. § 2510–2520, but "Pennsylvania's Wiretap Act is generally modeled after the federal analogue," *Com. v. Spangler*, 809 A.2d 234, 237 (Pa. 2002), and both statutes define the term "contents" in identical language. *Compare* 18 U.S.C. § 2510 *with* 18 Pa. C.S.A. § 5702.

WL 2816552 at *8 (W.D. Pa. Jun. 3, 2024) (citing *Oliver*); *Emmett v. Delta Air Lines, Inc.*, 2024 WL 2816502 at *8 (W.D. Pa. Jun. 3, 2024) (same), *vacated on other grounds*, 22-cv-1568 ( W.D. Pa. May 28, 2026) at ECF No. 79.

Other courts have concluded that determining whether such interactions are "contents" under WESCA is a task that a court is "better equipped to do . . . after a record is developed." *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 119 (W.D. Pa. 2019) (denying motion to dismiss WESCA claim); *Vonbergen v. Liberty Mutual Ins. Co.*, 705 F. Supp. 3d 440, 456–57 (E.D. Pa. 2023) (denying motion to dismiss because argument that plaintiff's browsing activity "lack[ed] the contents that are the hallmark of illegal interceptions under the act . . . may or may not be borne out after discovery").

Plaintiff's allegations fit squarely within *Google* and the line of cases identified above, because they show precisely how Dolce & Gabbana's "broad scheme" to track her website usage worked. For example, the Complaint alleges that the INSIDE Code "collects large swaths of information," including individuals' "IP addresses, unique ID Numbers, webpages visited, buttons clicked, keystrokes typed, products searched for, and more." Compl. ¶ 21. It captures this data through a piece of JavaScript computer code installed on Defendant's website, as demonstrated by screenshots Plaintiff included in the Complaint. *Id.* ¶¶ 24–25. In addition to intercepting an individual's communication with the website, it also enables Defendant to match sessions to individuals, "personalize content and ads," and promote its content to online customers through social media. *Id.* ¶¶ 19, 21, 23, 34, 36, 47, 55. Moreover, these factual allegations are derived from Plaintiff's investigation into Powerfront's public statements. *See id.* ¶¶ 17–19, nn. 1–3. These allegations therefore demonstrate that Dolce & Gabbana has installed

advertising tracking code on the website that intercepts information about the substance, purport, and meaning of the communications between the user and the website. *Id.* ¶ 50.

The fact that Plaintiff then began to receive advertisements on social media highlighting items similar to items Plaintiff browsed for on Defendant's website, *id.* ¶¶ 47–48, after encountering the INSIDE Code on Defendant's website directly supports the inference that the INSIDE Code was actively intercepting Plaintiff's communications with the website in precisely the manner she alleges. Plaintiff's allegations thus go beyond those that the *Ingrao* and *Cook* courts found lacking, because Plaintiff demonstrates exactly how Dolce & Gabbana and Powerfront "harnessed the capabilities" of the INSIDE Code to intercept her communications with the website. *See Ingrao*, 2024 WL 4892514, at *13 ("it is not enough for [plaintiff] to allege the potential capabilities of the [tracking code] . . . she needed to allege that [the Code Vendors] in fact, harnessed the capabilities she describes"); *Cook*, 689 F. Supp. 3d at 69 (similar). When Plaintiff's allegations are read together, the natural, plausible inference that flows from them is that *everything* she did on Dolce & Gabbana website was intercepted and received by Powerfront. The vast majority of courts have found allegations like these to suffice at the pleading stage, and so should this Court, if it decides to take up the question.

For these reasons, Plaintiff has stated a claim for Defendant's violation of WESCA.

### B. Plaintiff's Intrusion Upon Seclusion claim is sufficiently pled.

One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984). "An intrusion upon seclusion can be by electronic means such as wiretapping, photography or the use of binoculars." *Wolfson v.*

*Lewis*, 924 F. Supp. 1413, 1434 (E.D. Pa. 1996). Indeed, the Restatement specifically sets forth wiretapping as an illustration of an actionable invasion of privacy. Restatement (Second) of Torts § 652B, Illustration 2-3. Nonetheless, Dolce & Gabbana claims that Plaintiff cannot allege an intrusion into a traditionally private place nor that such an intrusion was highly offensive. Both arguments plainly lack merit, and Plaintiff's allegations establish that Defendant's conduct was intentional, intrusive, and highly offensive, and constituted intrusion upon seclusion.

First, Dolce & Gabbana argues that Plaintiff's claim should fail because her online browsing was not a private or secluded space. MTD at 16–17. But this argument is directly contradicted by Plaintiff's specific allegations regarding the basis for her expectation of privacy in internet communications—including Defendant specifically offering her the choice to protect her privacy while browsing via the cookie box—as well as how those privacy expectations are shared by the public at large. Compl. ¶¶ 23–34, 40, 52–54.

Further, courts have especially found that a rejection of optional cookies via a cookie banner, or some other opt-out mechanism or promise not to track online browsing, gives rise to a reasonable expectation that website visitors' information will be kept private. *See*, *e.g.*, *Shah v. MyFitnessPal, Inc*., 2026 WL 216334, at *4 (N.D. Cal. Jan. 27, 2026) (denying motion to dismiss intrusion upon seclusion claim where defendant "told plaintiffs that it would not collect information for advertising or analytics if they opted out of such collection," and emphasizing that this fact distinguished case from more typical internet tracking cases); *see also In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 293–95 (3d Cir. 2016) (holding that website operator could be liable for intrusion upon seclusion where it made representations that it would not collect certain visitor data, but did so anyway); *Google I*, 806 F.3d at 151 (recognizing breach

of privacy claim where Google indicated it would respect consumers' use of cookie blockers, yet contravened them instead).

Given Defendant's alleged representation that Plaintiff could opt out of optional tracking cookies, and Plaintiff's express rejection of optional cookies on Defendant's website, Plaintiff formed a reasonable expectation of privacy. Defendant's assertion that Plaintiff voluntarily provided information to Defendant in light of its representation that it would not track Plaintiff's interactions with the website ignores Plaintiff's well-pled allegations and the fact that her consent to exchange information with Dolce & Gabbana itself is not tantamount to consent to use additional methods to track her browsing data, monetize it, or allow simultaneous third-party monitoring.

Second, Dolce & Gabbana argues that its monitoring of Plaintiff's browsing activity was not highly offensive. But this argument misses the mark. The procured tracking technologies intercepted Plaintiff's online browsing information through software designed specifically to capture electronic communications, while providing the code in a format invisible to the average website visitor. More importantly, Defendant did so despite its explicit promise *not* to deploy the tracking technology based on Plaintiff's choices on the cookie box. *See Shah*, 2026 WL 216334, at *5 (finding that defendant's invasion of privacy was "highly offensive" in cookie rejection case, because plaintiffs alleged that the defendant misled users via the cookie banner and the invasion "was undertaken through deceptive conduct"); *In re Facebook,*, 956 F.3d at 602, 606) (finding that plaintiffs had sufficiently pled "highly offensive" conduct to survive a motion to dismiss by alleging Facebook continued surreptitious data after "set[ting] an expectation that logged-out user data would not be collected").

Given that what is important is "*how* [defendant] accomplished its tracking," *see In re Nickelodeon*, 827 F.3d at 292 (finding defendant's behavior to be highly offensive); *Google I*, 806 F.3d at 151 (finding defendant's conduct "highly offensive" where the defendant's conduct was surreptitious), the act of concealing oneself for purposes of surreptitiously wiretapping a person's internet activity after the person declined consent could be deemed highly offensive by a reasonable jury.

For these reasons, Plaintiff has stated a claim for intrusion upon seclusion.

**C. Plaintiff's Breach of Contract claim is sufficiently pled.**

Under Pennsylvania law, a claim for breach of contract "is established by the following elements: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant damages." *Commc'ns Supply Corp. v. Iron Bow Techs., LLC*, 529 F. Supp. 3d 423, 431 (W.D. Pa. 2021) (citation omitted). Plaintiff plausibly alleges that Dolce & Gabbana offered Plaintiff and members of the putative class a chance to "opt out" of tracking and instruct Defendant not to sell their communications to third parties. Compl. ¶ 33. Plaintiff also plausibly alleges that Dolce & Gabbana continued to sell or share her and other website visitors' information with third parties despite the explicit promise not to. *Id.* ¶¶ 2–5, 26, 38, 45–48, 52, 57–60, 105–07. As a result of Defendant's failure to honor Plaintiff's wishes, Plaintiff suffered damages. *Id.* ¶ 108.

**1. Plaintiff sufficiently pled the existence of a contract**

In order for a contract to be formed under Pennsylvania law, there must be "an offer, acceptance, and consideration." *Glover v. Junior*, 333 A.3d 323, 339 (Pa. 2025). Plaintiff has satisfied each of these contract formation requirements. *First*, Plaintiff clearly alleges that Defendant offered her the ability to manage how Defendant or third parties could collect, use,

and share website communications and that plaintiff could opt out of the collection, disclosure, use or analyses of her website interactions by Defendant and third parties by declining optional cookies. Compl. ¶¶ 33–37. This included Defendant's offer to allow a visitor to reject non-technical cookies, and to use the website without installing cookies that would collect and disclose information about Plaintiff's visit for personalized ads, social media advertising, and additional website analytics. *Id.*

*Second*, Plaintiff clearly alleges that she accepted Defendant's offer by rejecting optional cookies when Defendant presented her with the option. Compl. ¶¶ 45–46.

*Third*, Plaintiff has adequately alleged consideration. The Pennsylvania Supreme Court has explained considerations as "a benefit to the party promising, *or* a loss or detriment to the party to whom the promise is made." *Glover,* 333 A.3d at 339 (emphasis added). Here, Plaintiff's continued use and browsing of the website after rejecting optional cookies conferred a number of benefits on Dolce & Gabbana, including increased website traffic and the opportunity and ability for Defendant to make a sale. *See Antkowiak v. TaxMasters*, 455 F. App'x 156, 161 n. 9 (3d Cir. 2011) (consideration is sufficient if it slightly more than a "mere peppercorn"); *Thomas v. Thomas Flexible Coupling Co.*, 46 A.2d 212, 216 (Pa. 1946) ("[I]it is an elementary principle that the law will not enter into an inquiry as to the adequacy of the consideration."). Plaintiff specifically alleged that she would not have used Defendant's Website in the absence of Defendant's promise to safeguard her privacy. Compl. ¶ 106. That is a sufficient allegation of consideration.

**2. Plaintiff sufficiently pled cognizable damages.**

Dolce & Gabbana erroneously argues that Plaintiff has failed to plead cognizable damages. MTD at 21. In Pennsylvania, however, damages are speculative "only if the

uncertainty concerns the *fact* of damages, rather than the *amount.*" *Hickey v. University of Pittsburgh*, 81 F.4th 301, 316 (3d Cir. 2023) (citations omitted) (emphasis in original). Here, Plaintiff has sufficiently alleged cognizable damages stemming from Defendant's breach of contract in the form of diminished economic value of her personal data, unconsented dissemination of her personal information to third parties (an affront to her privacy rights and dignitary interests), unwanted targeted advertising resulting directly from Defendant's breach, and that Defendant improperly profited through its sharing of Plaintiff's personal data in breach of its promises not to do so. Compl. ¶¶ 45–48, 99–101.

Courts recognize that such allegations give rise to cognizable damages that support a breach of contract claim. *See*, *e.g.*, *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2024 WL 4350328, at *5 (E.D. Pa. Sept. 30, 2024) (loss of value of information cognizable damages where healthcare provider impermissibly disseminated individuals' personal information to Meta (Facebook)); *Opris v. Sincera Reprod. Med.*, 2022 WL 1639417, at *8 (E.D. Pa. May 24, 2022) (collecting cases) (recognizing that "several courts have recognized the property value of personal information); *In re Solara Medical Supplies, LLC Customer Data Security Breach Litigation*, 613 F.Supp.3d 1284, 1297 (S.D. Cal. 2020) (concluding that "[t]he dissemination of one's personal information can satisfy the damages element of a breach of contract claim").

In any event, courts have found that "the actual value of damages is not for the Court to determine at a motion to dismiss stage." *Murphy*, 2024 WL 4350328, at *5. This is particularly true since Pennsylvania permits a plaintiff to recover nominal damages for a breach of contract. *See Thorsen v. Iron and Glass Bank*, 476 A.2d 928, 931 (Pa. Super. Ct. 1984) ("[i]f a plaintiff is able to prove a breach of contract but can show no damages flowing from the breach, the plaintiff is entitled to recover nominal damages."). The *fact* of damages is clear—Defendant

breached a contract. The *amount* of Plaintiff's damage stemming from that breach, whether measured by the diminished value of her personal information, the value of that information to third-party retailers, or even nominal damages is not an issue the Court can or should reach at the pleading stage.

For these reasons, Plaintiff has sufficiently alleged damages, and together with her sufficient pleading of the other elements as explained above, she has adequately alleged a claim for breach of contract.

## VI. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss should be denied in its entirety.

Dated: July 24, 2026

Respectfully submitted,

*/s/ Jamisen A. Etzel*
Jamisen A. Etzel (PA 311554)
Nicholas A. Colella (PA 332699)
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412-322-9243
Fax: 412-231-0246
jamisen@lcllp.com
nickc@lcllp.com

*Counsel for Plaintiff and the Proposed Class*