**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

CARMEN RUDNICK, individually and
on behalf of those similarly situated,

Plaintiff,

Civil Action No. 2:26-cv-03916-GJP

v.

DOLCE & GABBANA S.r.l.,

Defendant.

**DEFENDANT DOLCE & GABBANA S.R.L.'S**
**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS AMENDED COMPLAINT**

Plaintiff's Opposition ("Opp.") does not grapple with the arguments Defendant Dolce & Gabbana actually made in its Motion to Dismiss or the allegations the Amended Complaint actually contains. Instead, it rewrites the Amended Complaint, supplementing threadbare allegations with new "facts" that appear nowhere in the pleading, including that advertisements were "immediate," that Powerfront is an "advertising tracking" tool, and that Defendant "knowingly" targeted Plaintiff in Pennsylvania. The Court should evaluate the motion based on what the Amended Complaint alleges, not on Plaintiff's post-hoc advocacy.

When the Amended Complaint is read as written, this case is straightforward. *Hasson v. FullStory, Inc.*, 114 F.4th 181 (3d Cir. 2024), directly controls the personal jurisdiction analysis and forecloses specific jurisdiction on these facts. Plaintiff acknowledges as much by asking this Court to disregard *Hasson* and invite en banc review—a request this Court has no power to grant. Plaintiff also completely fails to even acknowledge this Court's dismissal on personal jurisdiction grounds of a similar complaint brought by the same counsel just last year. *Parker v. Barclays Bank Delaware*, No. CV 25-2217, 2025 WL 2779334, at *7–8 (E.D. Pa. Sept. 29, 2025) (Pappert, J.).

On the merits, the Opposition cannot cure fatal deficiencies in the Amended Complaint including the failure to identify what "contents" Dolce & Gabbana allegedly intercepted, what "private" information was "invaded," or how a cookie banner created an enforceable contract with consideration, essential terms, and cognizable damages. The Motion to Dismiss should be granted.

**I. PLAINTIFF HAS NOT ESTABLISHED PERSONAL JURISDICTION**

Plaintiff's personal jurisdiction argument begins and ends with a simple proposition: Dolce & Gabbana operates a website accessible in Pennsylvania and knows, after users load the site, that some are located there. But the Third Circuit squarely rejected that theory in *Hasson,* holding that "a defendant does not expressly target a forum merely by operating a website that is accessible there—even when the plaintiff alleges harm in that forum arising out of his engagement with that website." 114 F.4th at 190. This Court is bound by that holding, and has already rejected similar attempts to establish personal jurisdiction in *Parker*.

The facts here are materially indistinguishable from *Hasson* and *Parker*. In all three cases: (1) the plaintiff visited a nationally available retail website from the forum state; (2) the defendant deployed code uniformly across the website, not targeted at forum-state users; (3) the plaintiff alleged that the code captured browsing interactions; and (4) the defendant maintained at least one physical retail location in the forum state. The Third Circuit held these facts insufficient to establish personal jurisdiction under both the minimum-contacts framework and the *Calder* effects test. *Hasson*, 114 F.4th at 190-94; *Parker* 2025 WL 2779334, at *3-7.

Plaintiff attempts to distinguish *Hasson* by asserting that Dolce & Gabbana "knew" Plaintiff was in Pennsylvania and continued tracking "anyway." Opp. at 7. But *Hasson* expressly addressed and rejected this argument because the relevant inquiry under *Walden v. Fiore*, 571 U.S. 277, 285 (2014), is whether the defendant's suit-related conduct was directed at the forum, not whether the defendant was aware that a forum resident might be affected. 114 F.4th at 190-91.

Here, the Powerfront INSIDE Code is deployed without regard to whether a user is in Pennsylvania and that there are no Pennsylvania-specific website campaigns, Powerfront configurations, or analytics. (Zambrelli Decl. ¶¶ 5-14.)

Plaintiff relies on the fact that the website received approximately 729,224 Pennsylvania sessions over two years, or roughly 1,000 per day. Opp. at 7. But this argument conflates purposeful availment with relatedness. The Third Circuit in *Hasson* expressly found that the defendant "purposefully availed itself of the Pennsylvania market" through its restaurants and website, yet held that the connection between those contacts and the website tracking claims were "too weak" to satisfy specific jurisdiction. 114 F.4th at 193-94. The same analysis applies here. Plaintiff's WESCA and privacy claims do not "arise out of or relate to" that availment because the Powerfront code is deployed uniformly without any Pennsylvania-specific targeting.

Nor does the Opposition's citation to *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021), help Plaintiff. *Ford* involved product-liability claims that arose from the defendant's extensive advertising, dealership network, and service operations in the forum, all of which were directly connected to the injurious product. Here, neither the website nor the Powerfront code is specifically directed at Pennsylvania. Instead, it is a uniform, nationwide deployment. *Ford*'s "relate to" standard still requires an "activity or occurrence. . . that takes place in the State," *id.* at 362, and there simply is none here. The code loads identically whether a user is in Pennsylvania, Texas, or New York. As this Court held in *Parker*, "these purported contacts fail outright…because the test turns on 'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" 2025 WL 2779334, at *3 (quoting *Walden*, 571 U.S. at 285). And just as in *Parker*, "The only reason [Dolce & Gabbana's] website

interacted with a browser located in Pennsylvania is that [Plaintiff] accessed the website in that state." *Id.*, at *5 (internal citations and footnote omitted).

Plaintiff points to *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025), but that case is not binding on this Court and is readily distinguishable. *Briskin* involved Shopify's alleged intentional extraction, maintenance, and commercial distribution of California consumers' personal data as a core revenue-generating activity. In other words, Shopify's business model was based on monetizing forum-state data. *Id.* at 756-57. No such allegation appears here. Dolce & Gabbana is a luxury fashion retailer, not a data broker, and Powerfront provides a visual customer-journey tool, not an advertising or data-monetization platform. Plaintiff does not allege that Dolce & Gabbana sells, licenses, or commercially distributes Pennsylvania users' data. *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1 (1st Cir. 2018), and *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344 (4th Cir. 2020), are likewise inapposite. Both involved defendants whose websites were specifically designed to profit from forum-state users' access and data. Here, Dolce & Gabbana's business is selling luxury goods nationwide, and the Powerfront code is an ancillary analytics tool deployed uniformly.

In a final attempt to remain in this Court, Plaintiff requests leave to conduct jurisdictional discovery regarding "Defendant's specific Pennsylvania sales volume through its website, or the revenue it has gained from selling access to visitors' data." Opp. at 8. This request should be denied because the requested discovery would not change the inevitable conclusion that the Court lacks personal jurisdiction over Dolce & Gabbana.

Jurisdictional discovery requires "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003). Plaintiff has not identified any specific facts that jurisdictional

discovery would uncover to support the exercise of personal jurisdiction. Using Powerfront code on Dolce & Gabbana's website and "capturing" Plaintiff's interactions with it "are activities with no connection to Pennsylvania, and no amount of discovery can change that." *See Schnur v. Papa John's Int'l, Inc.*, 2023 WL 5529775, at *6 (W.D. Pa. Aug. 28, 2023), *aff'd Hasson* 114 F.4th 181; *see also Parker*, 2025 WL 2779334, at *7-8. Dolce & Gabbana's Pennsylvania sales volume is irrelevant to whether a uniformly deployed analytics tool satisfies the relatedness requirement, particularly where only 2.76% of the website's visits and a paltry 0.028% of Powerfront-associated sessions occurred in Pennsylvania. Zambrelli Decl. at ¶¶ 18-19. As for "revenue from selling access to visitors' data," Plaintiff does not allege that Dolce & Gabbana sells user data at all; it describes the value of data generally, but not Dolce & Gabbana's actions selling Powerfront data or the sale of Plaintiff's specific data. The jurisdictional discovery request therefore is precisely the type of speculative fishing expedition that the standard set out in *Toys "R" Us* is designed to prevent. *See also Parker*, 2025 WL 2779334, at *8. Plaintiff's request for jurisdictional discovery should be denied.

**II. PLAINTIFF HAS NOT STATED A WESCA CLAIM**

Plaintiff's Opposition attempts to salvage the WESCA claim by characterizing the INSIDE Code as "advertising tracking code" that "intercepts information about the substance, purport, and meaning of the communications between the user and the website." Opp. at 12. But this characterization is contradicted by both publicly available information about the INSIDE Code (which the Opposition concedes is the only information used by Plaintiff to make her allegations, *see* Opp. at 12) and the Amended Complaint itself, and therefore fails under *Iqbal* and *Twombly*.

WESCA defines "contents" as "any information concerning the substance, purport, or meaning of that communication." 18 Pa. C.S. § 5702. As set forth in Dolce & Gabbana's opening brief, numerous courts have held that generic allegations of mouse clicks, hovers, page views, and

scrolling do not constitute "contents." *See* ECF 9 at pp. 18-19 of 27. Plaintiff's Opposition dismisses the *Cook* and *Ingrao* cases as "dicta," Opp. at 10-11 n.4, but the reasoning of those cases is persuasive and directly applicable. Plaintiff's Amended Complaint alleges that the INSIDE Code is "capable" of collecting IP addresses, unique IDs, webpages visited, buttons clicked, and keystrokes typed (Am. Compl. ¶¶ 20-23), but never identifies what Plaintiff actually searched, what pages she visited, what she typed, what she hovered over, or what specific "contents" were intercepted from her particular session.

The Opposition's reliance on *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125 (3d Cir. 2015) ("*Google Cookie*"), is misplaced. *Google Cookie* involved allegations that the defendants actively overrode cookie-blocking technology to track plaintiffs' internet usage across the entire internet, not merely browsing on the defendant's own retail website. *Id.* at 139. And *Google Cookie* ultimately held that the wiretap claim failed because the defendants were parties to the communications at issue. *Id.* at 140-42. Plaintiff here acknowledges that she voluntarily communicated with Dolce & Gabbana's website; she simply objects that a tool on the website observed her interactions—the functional equivalent of a clerk observing a customer in a physical store—after she stated her preference to continue browsing without allowing marketing and advertising cookies.

Throughout the Opposition, Plaintiff adds factual assertions absent from the Amended Complaint: that advertisements were "immediate" (Opp. at 4), that the code "intercepts all the interactions" (Opp. at 3), and that Powerfront "harnessed" its capabilities to target Plaintiff specifically (Opp. at 13). These assertions cannot be considered on a motion to dismiss. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to

dismiss."). In addition, the Opposition's characterization of Powerfront as "advertising tracking code" (Opp. at 12) is a litigation position unsupported by any factual allegation in the Amended Complaint. And while the Opposition suggests that Powerfront code enables Dolce & Gabbana to "personalize content and ads," Opp. at 12, that quote comes from ***the cookie banner*** (as alleged in Am. Compl. ¶ 34), ***not*** from Powerfront's "About Us" page or description of its SaaS software. The Court should not be misled. The Court must evaluate sufficiency based on what the Amended Complaint actually alleges: that at some unknown time Plaintiff visited a website, did unknown things, and at some unknown later time saw advertisements. There are no allegations of detailed URLs "intercepted" by Powerfront (for Plaintiff or otherwise), no allegations of what searches Plaintiff performed, and no allegations of Dolce & Gabbana using Powerfront to "harness" ***Plaintiff's*** information (whatever that was) as opposed to a general capability to "harness" information.

There also is no factual basis for attributing advertisements to the INSIDE Code rather than to any number of plausible alternative explanations. *Google Cookie*, 806 F.3d at 133 (complaint may be dismissed where the defendant offers a "plausible alternative explanation" that renders the plaintiff's theory implausible.) Here, the plausible alternative—that Plaintiff received targeted advertisements based on ordinary social media and internet search activity rather than a non-advertising analytics tool—is far more compelling than the conclusory allegation that a customer-journey visualization tool somehow generated Facebook and TikTok advertisements. Finally, there is no "substance, purport, or meaning" to a mouse hover or click. Thus, Plaintiff has not properly alleged interception of any contents of communications.

## III. PLAINTIFF HAS NOT STATED A CLAIM FOR INTRUSION UPON SECLUSION

An intrusion upon seclusion claim requires an ***intrusion*** into something ***private***. Plaintiff never identifies an intrusion into her personal space. As discussed *supra.* in connection with

personal jurisdiction, the only reason Dolce & Gabbana's website interacted with Plaintiff's browser is that Plaintiff herself accessed the website. Nor does Plaintiff identify what "private" information of hers was intentionally invaded. The Amended Complaint alleges only that she browsed a public retail website, which included visiting product pages, moving her mouse, and clicking links. These are not private activities; they are the digital equivalent of walking through a department store and looking at merchandise. *See Heaven v. Prime Hydration LLC*, 761 F. Supp. 3d 812, 819 (E.D. Pa. 2025) (comparing "tracking online retail behavior" to "observ[ing]. . . a brick-and-mortar store"); *Hartley v. Urban Outfitters*, 740 F. Supp. 3d 410, 421-22 (E.D. Pa. 2024) (dates and times opening promotional emails and duration of reading "not sufficiently personal," like keystrokes and mouse clicks on a retailer site).

Plaintiff's authorities for the "highly offensive" element are distinguishable. *Shah v. MyFitnessPal, Inc.*, 2026 WL 216334 (N.D. Cal. Jan. 27, 2026), involved a health and fitness app that collected sensitive health data after promising not to. *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 293-95 (3d Cir. 2016), involved a children's website that specifically promised not to collect personal information from minors—a context-specific promise with heightened privacy protections that has no parallel here. *Google Cookie*, 806 F.3d at 151, involved the deliberate override of Safari's cookie-blocking technology to track users across the entire internet, active deception fundamentally different from deploying a customer-journey visualization tool on one's own retail website despite offering users the option to express their "preference" to not allow marketing and advertising cookies. And *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 604 (9th Cir. 2020) involved "highly personalized profiles from sensitive browsing histories and habits."

Here, Plaintiff merely alleges that she declined optional cookies and then browsed a retail website. The "highly offensive" standard requires a "serious breach of social norms." Telling someone "we will not do X" and allegedly doing X is not, without more, a serious breach of social norms sufficient to state an intrusion claim, particularly where the plaintiff does not identify what sensitive information was accessed or how it caused harm beyond vague assertions of "mental anguish." The deployment of standard analytics code on a public retail website does not shock the conscience or offend community standards of decency, even if a cookie banner "represented" otherwise.

**IV. PLAINTIFF HAS NOT STATED A CLAIM FOR BREACH OF CONTRACT**

Under Pennsylvania law, contract formation requires "an offer, acceptance, and consideration." *Glover v. Junior*, 333 A.3d 323, 339 (Pa. 2025). A general informational statement about data practices is not a promise exchanged for consideration. *First*, a cookie consent banner is a regulatory compliance mechanism required or encouraged by privacy regulations, not an offer to enter into a bargained-for exchange. It communicates how a website handles data and provides users with options. Nothing in the banner's language ("[w]e use cookies, other than the technical ones, only once we have received your consent" (Am. Compl. ¶ 33)) manifests an intent to be bound in a contractual relationship with each website visitor.

*Second*, there is no consideration. Plaintiff asserts that her "continued use and browsing of the website after rejecting optional cookies conferred a number of benefits on Dolce & Gabbana, including increased website traffic and the opportunity and ability for Defendant to make a sale." Opp. at 17. But Plaintiff does not allege that she made any purchase, provided any personal information, or did anything beyond passively browsing a free, publicly available website. Browsing a free website is not a legal detriment to the browser or a bargained-for benefit to the host sufficient to constitute consideration. Plaintiff gave nothing in exchange for the alleged

promise; one additional user's "increased website traffic" and the "opportunity and ability for Defendant to make a sale" to one additional website visitor out of 26,412,630, or 0.00000379%, is the definition of a peppercorn. Moreover, the threadbare and conclusory allegation that Plaintiff would not have used the website absent the promise (Am. Compl. ¶ 106) is precisely the type of legal conclusion that *Iqbal* instructs courts to disregard. 556 U.S. at 678.

*Finally*, there are no cognizable damages. Plaintiff claims damages in the form of "diminished economic value of her personal data," "unwanted targeted advertising," and "dignitary injury." Opp. at 18. But these theories require Plaintiff to allege what specific information of ***hers*** was shared in breach of the alleged promise. She never does. Without identifying what information was actually shared, Plaintiff cannot establish the "fact of damages." *See Hickey v. Univ. of Pittsburgh*, 81 F.4th 301, 316 (3d Cir. 2023). Nor does Plaintiff's fallback to nominal damages save the claim. Nominal damages are available only where there is a valid contract and a proven breach, both of which are absent here for the reasons stated above and in Dolce & Gabbana's opening brief. The cases Plaintiff cites—*Murphy v. Thomas Jefferson University Hospitals*, *Opris v. Sincera Reproductive Medicine*, and *In re Solara Medical Supplies*—all involved dissemination of identified personal or medical information (names, medical records, Social Security numbers) in breach of specific contractual or policy commitments. None involved a cookie banner on a retail website where the plaintiff fails to identify what data was shared. Plaintiff has not properly alleged damages.

**CONCLUSION**

For the foregoing reasons and the reasons set forth in its opening brief, Defendant Dolce & Gabbana S.r.l. respectfully requests that this Court grant the Motion to Dismiss the Amended Complaint in its entirety with prejudice for lack of personal jurisdiction under Rule 12(b)(2) and, alternatively, for failure to state a claim under Rule 12(b)(6).

Respectfully submitted,

DATED: July 31, 2026

**BLANK ROME LLP**

By: */s/ Philip Yannella*

Philip Yannella
Glen L. Abramson
Maya Bradley
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Telephone: 215.569.5334
philip.yanella@blankrome.com
maya.bradley@blankrome.com

*Attorneys for Defendant*,
DOLCE & GABBANA S.R.L.