**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CARMEN RUDNICK, individually and on behalf of those similarly situated,<br>*Plaintiffs,*<br>v.<br>DOLCE & GABBANA S.r.l.,<br>*Defendant.* | CIVIL ACTION<br>NO. 26-3916 |

**Pappert, J.** **August 21, 2026**

**MEMORANDUM**

Carmen Rudnick brings a putative class action against Dolce & Gabbana, alleging the company captured information about her interactions with its website without her consent. She claims Dolce & Gabbana violated the Pennsylvania Wiretapping and Electronic Surveillance Control Act and alleges breach of contract and the tort of intrusion upon seclusion. Dolce & Gabbana moves to dismiss for lack of personal jurisdiction. The Court grants the motion and dismisses Rudnick's claims without prejudice.

I

Dolce & Gabbana operates www.dolcegabbana.com, where customers can search for and buy the company's products. (Am. Compl. ¶¶ 10, 11, Dkt. No. 1-2.) The website uses a vendor called Powerfront to "embed snippets of . . . code on the [w]ebsite" to record customers' "electronic communications." (*Id.* ¶ 2.) Rudnick went to the website and browsed products. (*Id.* ¶¶ 45, 46.) She alleges the code "recorded everything [she] . . . did on the [w]ebsite," including "what [she] searched for, what [she] looked at, the

information [she] input, and what [she] clicked on for the entire duration of [her] visit." (*Id.* ¶ 3.) Powerfront uses this information along with "IP addresses" and "unique ID numbers" to, among other things, "match website actions to individuals." (*Id.* ¶¶ 21, 23.) Although Rudnick elected "to continue without accepting cookies" on a "pop-up menu," (*id.* ¶¶ 26, 45), she nonetheless received advertisements for Dolce & Gabbana on Facebook and TikTok that "highlight[ed] items similar" to those she browsed while on the website, (*id.* ¶ 47).

II

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), "a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Such a motion "is inherently a matter which requires resolution of factual issues outside the pleadings, *i.e.*, whether *in personam* jurisdiction actually lies." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984) (citation modified). But "when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht*, 384 F.3d at 97 (citation modified). Still, a plaintiff must prove personal jurisdiction by a preponderance of the evidence. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). Once the defense has been raised, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence" and may not "rely on the bare pleadings alone." *Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990) (quoting *Time Share*, 735

F.2d at 67 n.9). The "plaintiff must respond with actual proofs, not mere allegations." *Id.*

A federal court may exercise personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located," so long as the exercise of jurisdiction comports with the Constitution. Fed. R. Civ. P. 4(k)(1)(A); *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). Because Pennsylvania's long-arm statute extends as far as federal due process permits, *see* 42 Pa. Stat. and Cons. Stat. Ann. § 5322(b), the only question is whether exercising personal jurisdiction comports with the Constitution.

III

Personal jurisdiction can be general or specific. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352 (2021). Dolce & Gabbana, an Italian company, is not subject to general personal jurisdiction in Pennsylvania because it is not incorporated, organized, headquartered or registered in the Commonwealth. Rudnick does not suggest otherwise and argues only that Dolce & Gabbana is subject to specific personal jurisdiction in Pennsylvania.

Specific jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and citation omitted). A court may exercise specific jurisdiction over a defendant if the plaintiff's claims "arise[] out of or relate[] to the defendant's contacts with the forum" State. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks and

citation omitted). The Supreme Court "has articulated two tests for specific jurisdiction: (1) the 'traditional' test—also called the 'minimum contacts' or purposeful availment test . . . and (2) the 'effects' test." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (first quoting *Int'l Shoe*, 326 U.S. at 316; then quoting *Calder v. Jones*, 465 U.S. 783, 787 & n.6 (1984)). These tests, though similar, "have distinct requirements," and courts may assess specific jurisdiction under both. *See id.* at 189.

A

The traditional test has three elements. First, the plaintiff must show the defendant has "minimum contacts" with the forum such that it "purposefully avail[ed] itself of the privilege of conducting activities within the forum" and "invok[ed] the benefits and protections of [the forum's] laws." *Hasson*, 114 F.4th at 187 (alterations in original) (quoting *Asahi Metal Indus. Co. v. Superior Ct. of Calif.*, 480 U.S. 102, 109 (1987)). Second, the plaintiff's claims "must 'arise out of or relate to' at least some of the defendant's contacts," "evidencing a strong relationship among the defendant, the forum, and the litigation." *Id.* (quoting *Ford Motor*, 592 U.S. at 365). And third, exercising jurisdiction over the defendant must "comport[] with traditional notions of fair play and substantial justice" such that "the defendant 'should reasonably anticipate being haled into court' in that forum." *Id.* (alteration in original) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

As an initial matter, Dolce & Gabbana claims *Hasson v. FullStory, Inc.* is "materially indistinguishable" and controls the outcome of this case. *See* (D&G's Mot. to Dismiss at 7, Dkt. No. 9-1). There, a Pennsylvania resident alleged Papa Johns deployed tracking code to his web browser, monitored his interactions with its website

and shared his information with third-party vendors. *Hasson*, 114 F.4th at 185, 188. The Third Circuit Court of Appeals found Papa Johns had minimum contacts with Pennsylvania based on its brick-and-mortar stores, advertisements and sales via its website, but that these "considerable contacts" did not relate to their website, which, like here, was the focus of the litigation. *Id.* at 193–94. Rudnick doesn't attempt to distinguish her factual allegations from those underlying *Hasson*. Instead, "for purposes of issue preservation" she argues "*Hasson* was wrongly decided and must be overturned by the Third Circuit en banc, or the Supreme Court." (Rudnick's Resp. in Opp'n at 15, Dkt. No. 11.) Setting aside Rudnick's disagreement with *Hasson*, the Court applies its reasoning here.

1

Rudnick argues Dolce & Gabbana purposefully availed itself of Pennsylvania "through its website," which "averages around 1,000 visits from Pennsylvania every day," and by "operating a retail store in the state." (*Id.* at 12.) She conclusorily alleges Dolce & Gabbana "targets its interactive [w]ebsite at residents in Pennsylvania," and customers can "purchase products [on the website] and have them delivered to their homes within the United States, including Pennsylvania." (Am. Compl. ¶ 11.) Rudnick contends Dolce & Gabbana "automatically tailors" its website to "do business in the United States by translating" it into English and "defaulting the currency" to U.S. dollars when customers access the website from Pennsylvania. (*Id.* ¶ 12.) She claims the company "generates substantial revenue" from sales in the State. (*Id.* ¶ 11.)

As Dolce & Gabbana correctly observes, many of the purported contacts "rely on national features: a website that sells and delivers products within the United States,

English-language presentation, U.S.-dollar pricing, a +1 customer-service number, Eastern Time hours, and a nationwide store locator." (D&G's Mot. to Dismiss at 13 (citing Am. Compl. ¶¶ 11–14.)) Indeed, the contacts Rudnick offers are largely the "derivative benefit of [Dolce & Gabbana's] successful attempt to exploit the United States as a national market" and do not represent purposeful availment of the privilege of conducting business specifically in Pennsylvania. *See D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104 (3d Cir. 2009).

In any event, both parties misstate the law on this issue. Rudnick merges the *Calder* "effects" test and the traditional test. *See* (Rudnick's Resp. in Opp'n at 12–13 (arguing "express[] aim[ing]"—part of the *Calder* test—in the purposeful availment section of her briefing).) Dolce & Gabbana also mixes up the test. It merges parts one and two of the traditional test by arguing Rudnick "identifies no Pennsylvania-specific purposeful availment *tied to the challenged conduct*." (D&G's Mot. to Dismiss at 13 (emphasis added.)) In the same paragraph, Dolce & Gabbana quotes a portion of *Hasson* dedicated to express targeting, which is part of the *Calder* "effects" test, not the traditional test. (*Id.*) And Dolce & Gabbana seems to concede it purposefully availed itself of the forum. It suggests *Hasson*'s reasoning—that the defendant purposefully availed itself of the Pennsylvania market but that the connection between its contacts with the forum and the claims at issue was too weak to satisfy specific jurisdiction—applies here, and indeed controls the outcome. (D&G's Reply at 3, Dkt. No. 12.)

Courts' varied approach to personal jurisdiction in cases involving website cookies perhaps contributes to the parties' confusion. *See Parker v. Barclays Bank Delaware*, No. 25-2217, 2025 WL 2779334, at *3 n.2 (E.D. Pa. Sept. 29, 2025)

(comparing cases). All this notwithstanding, the parties apparently acknowledge Dolce & Gabbana purposefully availed itself of the privilege of conducting activities in the forum by virtue of its physical presence and use of its website to sell products here. *See Hasson*, 114 F.4th at 193 (finding Papa Johns purposefully availed itself of the market because of, among other things, its "85 brick-and-mortar locations" and its regular sales to Pennsylvania residents "via its website."); *see also Middleton v. Trans Union, LLC.*, No. 20-3756, 2021 WL 3674617, at *4 (E.D. Pa. Aug. 19, 2021) ("The act of operating brick-and-mortar stores alone is sufficient to establish that [the defendant] has purposefully availed itself of the benefits and privileges of doing business within the Commonwealth."). The Court thus focuses its analysis on relatedness.

2

"Relatedness" requires that Rudnick's claims "arise out of or relate to" Dolce & Gabbana's contacts with Pennsylvania. *Hasson*, 114 F.4th at 193 (citing *Ford Motor*, 592 U.S. at 364). She must show a "strong relationship" among Dolce & Gabbana, Pennsylvania and the tracking software embedded in the website. *See id.* Dolce & Gabbana argues it has a weak relationship with the Commonwealth and that its website is only related to Pennsylvania incidentally, by virtue of its national footprint. (D&G's Mot. to Dismiss at 13–14.) The company has just one physical location here, employs no one in the State to support the website and has no servers in Pennsylvania to operate it or the tracking software. (Zambrelli Decl. ¶ 15, Dkt. No. 9-2.) Pennsylvanians represented 2.76 percent of its total "website sessions" across the United States between May 2024 and April 2026, although it is unclear where this ranks among other states. *See* (*Id.* ¶¶ 17–18). Nonetheless, Dolce & Gabbana points

out that Rudnick fails to allege any advertisement or marketing of the website in Pennsylvania, so any web traffic in the State is incidental to the website's national availability. *See* (D&G's Mot. to Dismiss at 14 (citing *Parker*, 2025 WL 2779334 at *4)).

Rudnick barely interacts with these arguments. She argues her claims "'arise out of' [Dolce & Gabbana's] contact with her device, which [it] knew was in Pennsylvania, particularly after [she] had loaded the [w]ebsite on her device and sent a transmission indicating her rejection of tracking [c]ookies." (Rudnick's Resp. in Opp'n at 13.) To the extent Rudnick argues Dolce & Gabbana's knowledge of her location matters, that goes to the *Calder* "effects" test, not the traditional test. *See Hasson*, 114 F.4th at 192. She cites only two cases in support of her relatedness arguments: *Plixer Int'l, Inc. v Scrutinizer GmbH*, 905 F.3d 1 (1st Cir. 2018) and *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344 (4th Cir. 2020).

*Plixer* is inapposite. The only issue on appeal there was whether the defendant's "*nationwide contacts with the United States* supported specific jurisdiction under Federal Rule of Civil Procedure 4(k)(2)," *Plixer,* 905 F.3d at 5 (emphasis added), which applies to claims arising under federal law and asks whether a defendant is "subject to jurisdiction in *any state's* courts of general jurisdiction," Fed. R. Civ. P. 4(k)(2) (emphasis added). And the district court in the underlying case "found that [defendant's] Maine contacts, by themselves, were insufficient to support jurisdiction." *Plixer*, 905 F.3d at 5 n.4.

Although a closer analytical and factual analogue, *UMG* is nonetheless distinguishable. The websites at issue there had a much more significant connection to the forum, Virginia: their domains were administered by companies headquartered

there and the website's servers were hosted by a company with servers physically located in Virginia. *UMG*, 963 F.3d at 349. The Fourth Circuit Court of Appeals found "the [w]ebsite's large audience in Virginia for alleged music piracy and the sale of visitors' data to advertising brokers are what gave rise to Appellants' copyright infringement claims." *Id.* at 355. The panel reasoned "this is not a situation where a defendant merely made a website that happens to be accessible in Virginia . . . Rather, [the defendant] actively facilitated the alleged music piracy through a complex web involving Virginia visitors, advertising brokers, advertisers, and location-based advertising." *Id.* (citation omitted). In other words, *UMG* concluded there was a "strong relationship among the defendant, the forum, and the litigation." *Cf. Hasson*, 114 F.4th at 193; *see also Schnur v. Papa John's Int'l, Inc.*, No. 22-1620, 2023 WL 5529775, at *3 (E.D. Pa. Aug. 28, 2023) (finding *UMG* distinguishable because it "concerned claims that . . . specifically targeted the plaintiffs in their fora."), *aff'd Hasson* 114 F.4th 181.

Dolce & Gabbana's business doesn't strongly relate to its purported digital monitoring of Rudnick's device, nor has Rudnick made any allegation suggesting it advertises or markets its website in Pennsylvania. *Contrast DeLong v. PHE, Inc.*, No. 24-5212, 2026 WL 2075564, at *7 (E.D. Pa. July 16, 2026) (finding a website was "expressly advertise[d] to Pennsylvanians as an optimal method to purchase its products"), *with Hasson*, 114 F.4th at 194 ("[W]hile [plaintiff] details Papa Johns' promotion of its products in Pennsylvania, he did not . . . allege facts regarding Papa Johns' in-forum promotion of the device that allegedly harmed him—the website."), *and Perkins v. Goodyear Tire and Rubber Co.*, No. 22-1521, 2025 WL 81568, at *5 (W.D. Pa.

Jan. 13, 2025) ("Although Goodyear promoted its automotive business in Pennsylvania, it did not promote its website—the device that allegedly caused Plaintiffs' harm").

*Hasson* was a "close call" partly because Papa Johns had "considerable" contacts with Pennsylvania, including its 85 retail stores in the Commonwealth and an advertisement it ran when the Eagles were in the Super Bowl. *See* 114 F.4th at 193–94. Dolce & Gabbana's contacts with Pennsylvania pale in comparison. Rudnick alleges the physical presence of one retail store and a website with no Pennsylvania-specific features, and she mentions no advertisement or marketing. The low "overall intensity of [Dolce & Gabbana's] forum contacts" elevates the "degree of relatedness required" to support personal jurisdiction. *See id.* at 193 (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)). Here, as in *Hasson*, the connection between Dolce & Gabbana, Pennsylvania and the deployment of tracking software on its website is "too weak" and fails under the relatedness element of the traditional test for personal jurisdiction. *See id.* at 193, 195 (quoting, then citing *Hepp v. Facebook*, 14 F.4th 204, (3d Cir. 2021)).

3

Rudnick brings a breach of contract claim, alleging she "rejected all cookies when [Dolce & Gabbana] presented her with the option," and the website nonetheless deployed cookies. (Am. Compl. ¶¶ 26, 105–06.) Setting aside the weakness of Rudnick's claim on the merits, the Court nonetheless applies the traditional personal jurisdiction test. *See Remick v. Manfredy*, 238 F.3d 248, 255–56 (3d Cir. 2001) (explaining tort claims and contract claims involve "different considerations" with respect to personal jurisdiction). The parties don't brief this issue, and Rudnick fails to

carry her burden of providing "actual proofs, not mere allegations" as to this claim. *See Patterson*, 893 F.2d at 603–04. Regardless, the "totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing" cannot support personal jurisdiction over Dolce & Gabbana. *See Remick*, 238 F.3d at 256. The only allegation Rudnick makes about contract formation is that she selected her preference not to receive cookies via a "pop-up window," *see* (Am. Compl. ¶¶ 26, 33, 45), which cannot "establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [Dolce & Gabbana]." *See Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 152 (3d Cir. 1996).

B

The *Calder* "effects" test applies to "an intentional tortfeasor whose 'contacts with the forum . . . otherwise [do] not satisfy the requirements of due process' under the traditional test." *Hasson*, 114 F.4th at 187 (alteration in original) (citation modified) (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998)). The effects test "require[s] that the tortious actions of the defendant have a forum-directed purpose," a standard "*more demanding*" than the "*relatedness requirement of the effects test*." *Id.* at 189 (quoting *Miller Yacht*, 384 F.3d at 99). Rudnick must "plead facts establishing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Id.* at 187 (citing *Remick*, 238 F.3d at 258).

"Only if the 'expressly aimed' element of the effects test is met need [the Court] consider the other two elements." *Marten*, 499 F.3d at 297. To satisfy that element,

Dolce & Gabbana's website must be "targeted at a particular jurisdiction." *Hasson*, 114 F.4th at 190 (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003)). A "defendant does not expressly target a forum merely by operating a website that is accessible there—even when the plaintiff alleges harm in that forum arising out of his engagement with that website." *Id.*

Rudnick vaguely argues Dolce & Gabbana expressly aimed its conduct at Pennsylvania. *See* (Rudnick's Resp. in Opp'n at 13 (citing *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025)). In *Briskin*, the Ninth Circuit Court of Appeals found "Shopify expressly aimed its conduct at California though its extraction, maintenance, and commercial distribution of the California consumers' personal data in violation of California laws." 135 F.4th at 756. Shopify "created user profiles using the collected data for the benefit of its merchants," and shared "personal identifying information with other third parties who store, analyze, and market that information to their customers as well." *Id.* at 748. This "data collection and monetization scheme," *id.* at 762, is a far cry from "Dolce & Gabbana's business [] selling luxury goods nationwide" and deploying the "Powerfront code" "uniformly" as an "ancillary analytics tool," (D&G's Reply at 4). None of Rudnick's allegations show Dolce & Gabbana's "website is accessible only in Pennsylvania, that [it] deploys [tracking code] only to users who access the site while in Pennsylvania, or that the website tailors its content in any meaningful way to Pennsylvanians." *Hasson*, 114 F.4th at 190.

IV

Rudnick argues the Court should authorize jurisdictional discovery before deciding whether Dolce & Gabbana is subject to personal jurisdiction in Pennsylvania.

(Rudnick's Resp. in Opp'n at 14.) She suggests "Pennsylvania sales volume through [the] website, or the revenue it has gained from selling access to visitors' data" may be "relevant to [the Court's] analysis." (*Id.*) "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." *Toys*, 318 F.3d at 456 (internal citations and quotation marks omitted). Courts should permit jurisdictional discovery "[i]f a plaintiff presents allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between the party and the forum state.'" *Id.* (citation modified) (quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

The sales volume and revenue to which Rudnick refers would not change the Court's analysis. Dolce & Gabbana's use of tracking code on its website to capture Rudnick's interactions with it is an "activity with no connection to Pennsylvania, and no amount of discovery can change that." *See Schnur*, 2023 WL 5529775, at *6, *aff'd Hasson* 114 F.4th 181; *see also Parker*, 2025 WL 2779334 at *7 (same).

V

A court should grant a plaintiff leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). But a court need not do so when amendment would be "futile." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 113 (3d Cir. 2018). Amendment is futile if it would not "cure the deficiency" in the complaint or the complaint would not "withstand" another motion to dismiss. *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988). Rudnick cannot amend her complaint to allege jurisdictional facts which could show the Court has specific personal

jurisdiction. "The only connection between [Dolce & Gabbana], the forum, and the deployment of [tracking code] is that [Rudnick] happened to access [Dolce & Gabbana's] website while in Pennsylvania; he could just as easily have done so in another forum, and his complaint would not change." *See Schnur*, 2023 WL 5529775, at *7, *aff'd Hasson* 114 F.4th 181.

When a court dismisses claims for lack of personal jurisdiction, it must at least consider transferring the case. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020). Neither party briefs the issue, leaving the Court "unaware of any interests and intentions that have led the parties" not to seek transfer. *See Rinaldi v. FCA US LLC*, No. 22-886, 2022 WL 17340667, at *7 (D.N.J. Nov. 30, 2022).

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.